# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**TYKE FONTENOT**                                      **CIVIL ACTION**

**VERSUS**                                             **NO. 24-907-SDD-SDJ**

**COMMISSIONER OF
SOCIAL SECURITY**

## <u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have **14 days** after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within **14 days** after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on March 6, 2026.

_____
**SCOTT D. JOHNSON
UNITED STATES MAGISTRATE JUDGE**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**TYKE FONTENOT**                                                    **CIVIL ACTION**

**VERSUS**                                                                   **NO. 24-907-SDD-SDJ**

**COMMISSIONER OF**
**SOCIAL SECURITY**

**REPORT AND RECOMMENDATION**

Plaintiff Tyke Fontenot brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration, terminating his disability insurance benefits.[1]  Plaintiff has filed a Brief in Support of Appeal (R. Doc. 13), and the Commissioner has filed a Memorandum in Opposition (R. Doc. 14). Plaintiff filed a Reply Memorandum in Support of Appeal (R. Doc. 15). Based on the applicable standard of review under 42 U.S.C. § 405(g), substantial evidence supports the Commissioner's decision, and the Administrative Law Judge applied the correct legal standards. Accordingly, it is recommended that the Commissioner's decision be affirmed.

## I.    PROCEDURAL HISTORY

On January 14, 2020, Plaintiff filed an application for DIB, alleging disability beginning on August 1, 2019.[2] In a determination dated March 4, 2020, Plaintiff was found disabled beginning on August 1, 2019.[3] This is the most recent favorable medical decision and is known as the "comparison point decision" or CPD.[4] On February 8, 2022, Plaintiff received a Notice of

---

[1] R. Doc. 1 at 1.
[2] R. Doc. 8-6 at 2.
[3] R. Doc. 8-4 at 2.
[4] R. Doc. 8-3 at 16.

Disability Cessation, informing him that he was no longer disabled as of February 3, 2022.[5] This determination was upheld upon reconsideration after a disability hearing by a state agency Disability Hearing Officer.[6] Thereafter, Plaintiff filed a written request for a hearing before an Administrative Law Judge.[7] Plaintiff appeared by telephone and testified at a hearing held on March 5, 2024.[8] Plaintiff's main representative was Christina Crotwell, a non-attorney representative with attorney Loyd Thomas Bourgeois, Jr's office.[9] Christi Lamandre McCaffery, an impartial vocational expert, also appeared and testified by telephone at the hearing.[10] After reviewing all of the evidence of record, the ALJ found that Plaintiff's disability did indeed end on February 3, 2022, and that Plaintiff had not become disabled again since that date.[11] Plaintiff sought review of that decision by the Appeals Counsel.[12] On September 18, 2024, the Appeals Counsel denied Plaintiff's request for review.[13]

On November 1, 2024, Plaintiff timely filed his Complaint with this Court.[14] Accordingly, Plaintiff exhausted his administrative remedies before filing this action for judicial review, and the Appeals Council's decision is the Commissioner's final decision for purposes of judicial review.[15]

---

[5] R. Doc. 8-5 at 3.
[6] R. Doc. 8-5 at 35.
[7] R. Doc. 8-5 at 52.
[8] R. Doc. 8-3 at 46.
[9] R. Doc. 803 at 50; R. Doc. 8-5 at 112.
[10] R. Doc. 8-3 at 47.
[11] R. Doc. 8-4 at 46.
[12] R. Doc. 8-5 at 141.
[13] R. Doc. 8-3 at 2.
[14] R. Doc. 1.
[15] *See* 20 C.F.R. § 404.981 ("The Appeals Council may deny a party's request for review or it may decide to review a case and make a decision. The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you or another party file an action in Federal district court, or the decision is revised. You may file an action in a Federal district court within 60 days after the date you receive notice of the Appeals Council's action.").

## II.    STANDARD OF REVIEW

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); *Carriere v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991). If the Commissioner's findings are supported by substantial evidence, this Court must affirm them. *Martinez*, 64 F.3d at 173.

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401(1971); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). It is more than a scintilla but may be less than a preponderance. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2002).

A district court may not try the issues de novo, re-weigh the evidence, or substitute its own judgment for that of the Commissioner. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Spellman*, 1 F.3d at 360. The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. 91, 112-13 (1992). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Carey*, 230 F.3d at 135. Any of the Commissioner's findings of fact that are supported by substantial evidence are conclusive. *Ripley*, 67 F.3d at 555. Despite this Court's limited function on review, the Court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and

whether substantial evidence exists to support it. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).

## I.     TERMINATION OF BENEFITS

The Fifth Circuit has explicitly addressed the scope of this Court's review of the termination of a Plaintiff's benefits. *See Taylor v. Heckler*, 742 F.2d 253, 256 (5th Cir. 1984) (citing *Buckley v. Heckler*, 739 F.2d 1047, 1048-49 (5th Cir. 1984)). As noted in *Buckley*, even though the burden of *proving* disability is on a Social Security claimant, "once evidence has been presented which supports a finding that a given condition exists it is presumed in the absence of proof to the contrary that the condition has remain unchanged." 739 F.2d at 1049 (citing *Rivas v. Weinberger*, 475 F.2d 255, 258 (5th Cir. 1973)). In other words, once benefits have been awarded, the Plaintiff is afforded a "presumption of continuing disability that requires the Secretary to provide evidence" that the Plaintiff's condition has improved. *Taylor*, 742 F.2d at 255. "[A] claimant's benefits may be terminated only if substantial evidence demonstrates both that 'there has been any medical improvement' and that 'the individual is now able to engage in substantial gainful activity.'" *Hallaron v. Colvin*, 578 F. App'x 350, 353 (5th Cir. 2014). "Agency regulations define 'medical improvement' as 'any decrease in the medical severity of [a recipient's] impairment(s) which was present at the time of the most recent favorable medical decision that [she was] disabled or continued to be disabled.'" *Id.* at 351-52 (quoting 20 C.F.R. § 404.1594(b)(1)).

The Social Security Administration may terminate benefits if the agency concludes, after reviewing a Plaintiff's case, that the Plaintiff's impairment "has ceased, does not exist, or is not disabling...." 42 U.S.C.A. § 423(f). In a typical social security case, where the issue is whether a Plaintiff is disabled and should therefore be granted Social Security benefits in the first place, the Commissioner (through the ALJ) applies a five-step sequential evaluation process. *See* 20 C.F.R.

§§ 404.1520, 416.920. In cases such as this, however, when the Commissioner is deciding whether to terminate existing benefits due to an alleged medical improvement, 20 C.F.R. § 404.1594(f) prescribes an eight-step evaluation process to determine: (1) whether the Plainitiff is engaging in substantial gainful activity; (2) if not gainfully employed, whether the Plaintiff has an impairment or combination of impairments which meets or equals a listing; (3) if impairments do not meet a listing, whether there has been medical improvement; (4) if there has been medical improvement, whether the improvement is related to the Plaintiff's ability to do work; (5) if there is improvement related to Plaintiff's ability to do work, whether an exception to medical improvement applies; (6) if medical improvement is related to the Plaintiff's ability to do work or if one of the first groups of exceptions to medical improvement applies, whether the Plaintiff has a severe impairment; (7) if the Plaintiff has a severe impairment, whether the Plaintiff can perform past relevant work; and (8) if the Plaintiff cannot perform past relevant work, whether the Plaintiff can perform other work. 20 C.F.R. § 404.1594(f).

## II.    THE ALJ'S DECISION

After careful consideration of the record, the ALJ followed the eight-step evaluation process to make the determination that Plaintiff's disability ended on February 3, 2022, and Plaintiff had not become disabled since that date.[16]

At the first step, the ALJ found that Plaintiff has not engaged in substantial gainful activity since August 1, 2019, the alleged onset of disability.[17]  The ALJ determined that since February 3, 2022, the Plaintiff has had the following medically determinable impairments: degenerative disc disease and facet arthropathy of the lumbar spine, immunosuppression status post liver transplant,

---

[16] R. Doc. 8-3 at 27.

[17] R. Doc. 8-3 at 16; In a determination dated March 4, 2020, Plaintiff was found disabled beginning on August 1, 2019. The ALJ relied on this decision as the "comparison point decision" or CPD.

chronic idiopathic urticaria, obesity, hemorrhoids, major depressive disorder, generalized anxiety disorder, aortic calcification, asthma and essential hypertension.[18]

At the second step, the ALJ found that since February 3, 2022, the Plaintiff has not had an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).[19] To support this conclusion, the ALJ stated that "there is no evidence of impairment-related physical limitation of musculoskeletal functioning as described in the listings in section 1.00. Records confirm normal pulmonary effort, no respiratory distress, normal breath sounds and no wheezing, with no evidence of respiratory impairment as described within the 3.00 listings (CDR17F/9)."[20] Additionally, the ALJ stated that "there is no evidence of gastrointestinal impairment as described within the listings in section 5.00."[21] Lastly, the ALJ concluded that the Plaintiff "does not have a severe mental impairment or combination of mental impairments."[22] The ALJ provided a detailed analysis of the "four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria."[23]

At the third step, the ALJ determined that a medical improvement occurred on February 3, 2022.[24] At the fourth step, the ALJ determined that the medical improvement is related to the ability to work because, by February 3, 2022, the Plaintiff's CPD impairment(s) no longer met or

---

[18] R. Doc. 8-3 at 16.
[19] R. Doc. 8-3 at 16.
[20] R. Doc. 8-3 at 17.
[21] R. Doc. 8-3 at 17.
[22] R. Doc. 8-3 at 17.
[23] R. Doc. 8-3 at 17; the four broad functional areas discussed by the ALJ are 1) understanding, remember or applying information; 2) interacting with others; 3) concentrating, persisting or maintaining pace; and 4) adapting or managing oneself.
[24] R. Doc. 8-3 at 17.

medically equaled the same listings that were met at the time of the CPD (20 CFR 404.1594(c)(3)(i)).[25]

At the sixth step,[26] the ALJ determined that since February 3, 2022, the Plaintiff has continued to have a severe impairment or combination of impairments (20 CFR 404.1594(f)(6)).[27] At the seventh step, the ALJ determined that, based on the impairments present since February 3, 2022, the Plaintiff has had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can never climb ladders, ropes, or scaffolds; he can occasionally climb ramps and stairs, kneel, crouch, crawl, and stoop; he can never work in the presence of hazardous machinery with fast moving parts, at unprotected heights, or be required to operate a motor vehicle as part of the job duties; the Plaintiff can never work in the presence of concentrated exposure to extreme cold, extreme heat, or vibration; he can never work in the presence of concentrated exposure to fumes, noxious odors, dusts, mists, gases, and poor ventilation.[28] Importantly, the ALJ concluded that:

> "the claimant's paragraph B limitations are so slight that they do not cause any measurable loss of function in the mental abilities to understand, remember, or carry out instructions; to make work related decisions; or to respond appropriately to supervisors, coworkers, the public, to usual work situations, to changes in work setting, or to work pressures in a work setting. Thus, the residual functional capacity assessment does not reflect any limitation in mental abilities."[29]

The ALJ determined that since February 3, 2022, the Plaintiff has been unable to perform past relevant work.[30] At the eighth step, the ALJ determined that since February 3, 2022, considering the Plaintiff's age, education, work experience, and residual functional capacity based

---

[25] R. Doc. 8-3 at 19.
[26] The ALJ did not explicitly address the fifth step; the ALJ did not explicitly state whether an exception to the medical improvement applies.
[27] R. Doc. 8-3 at 19.
[28] R. Doc. 8-3 at 21.
[29] R. Doc. 8-3 at 18-19.
[30] R. Doc. 8-3 at 21.

on the impairments present since February 3, 2022, the Plaintiff has been able to perform a significant number of jobs in the national economy (20 CFR 404.1560(c) and 404.1566).[31]

## IV.    PLAINTIFF'S ASSIGNMENT OF ERROR

On appeal, the Plaintiff argues the following assignments of error: (1) the ALJ's RFC and step eight determination lacked the support of substantial evidence because the ALJ did not include social limitations; and (2) the ALJ's step eight decision and analysis did not provide Plaintiff with due process.[32]

## V.    LAW AND ANALYSIS

### A.    Legal Standard

Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).  It is more than a mere scintilla and less than a preponderance. *Carey* 230 F.3d at 135. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)).  Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side.  *Masterson*, 309 F.3d at 272; *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).  In applying the substantial evidence standard, the court must review the entire record as whole, but may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision.  *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

---

[31] R. Doc. 8-3 at 26.
[32] R. Doc. 13 at 2; R. Doc. 14 at 3.

B.     **Discussion**

**1. Substantial evidence supports the ALJ's RFC assessment.**

The ALJ properly assessed Plaintiff's RFC and ultimately found him not disabled since February 3, 2022, by considering and exhaustively detailing the medical records, including devoting over four pages of her decision to her review of the medical evidence and Plaintiff's own testimony.[33] The ALJ determined that, since February 3, 2022, Plaintiff had the RFC to perform light work[34] as defined in 20 C.F.R. § 404.1567(b) except he could never climb ladders, ropes, or scaffolds; could occasionally climb ramps and stairs, kneel, crouch, crawl, and stoop; could never work in the presence of hazardous machinery with fast moving parts, at unprotected heights, or be required to operate a motor vehicle as part of the job duties; could never work in the presence of concentrated exposure to extreme cold, extreme heat, or vibration; and he could never work in the presence of concentrated exposure to fumes, noxious odors, dusts, mists, gases, and poor ventilation.[35] The ALJ's exhaustive consideration of the medical evidence supports this RFC finding. Plaintiff disagrees and argues that the ALJ should have limited his social interaction.[36] Plaintiff bases this argument on the December 2, 2021 psychological consultative examination conducted by Seth Kunen, Ph.D.[37] Plaintiff argues that Dr. Kunen's opinion is consistent with a consultative physician's opinion that he has a limitation in mentation.[38] However, Dr. Kunen did not find that Plaintiff had a limitation in mentation.[39]

---

[33] R. Doc. 8-3 at 17-21.
[34] Light work is defined as the ability to occasionally lift and/or carry and push and/or pull 20 pounds and frequently lift and/or carry and push and/or pull 10 pounds; stand and/or walk for a total of six hours in an eight-hour workday; and sit for a total of six hours in an eight-hour workday. 20 C.F.R. § 404.1567(b).
[35] R. Doc. 8-3 at 21.
[36] R. Doc. 13 at 12-15.
[37] R. Doc. 13 at 12-15.
[38] R. Doc. 13 at 13.
[39] R. Doc. 8-9 at 932.

At his evaluation with Dr. Kunen, Plaintiff reported that he was on immunosuppressant medications, and had hemorrhoids, lacking the physical strength to perform his work duties.[40] He also reported that he was easily fatigued, had shortness of breath, nerve pain in the shoulder, brain fog, and back pain.[41] He reported irritable mood, poor appetite, poor sleep, poor attention and concentration, and low energy.[42] He said that he could take care of his daily activities but was frequently tired.[43] During the assessment, Plaintiff knew the answers to 25 out of 26 questions; he was able to solve seven out of eight basic computation problems; he understood similarities; and he understood three out of five proverbs.[44] He was unable to respond to logical problem-solving questions and had significant problems with them; and he was asked five questions regarding socially responsible behavior, and gave one socially irresponsible answer.[45]

Dr. Kunen reported that Plaintiff's questionnaire scores were consistent with depression and anxiety; he was anxious, but also alert, oriented, and able to maintain composure; he presented adequate attention and effort; his memory was good; his language was adequately developed; as was his fund of general knowledge and math ability.[46] Finally, Dr. Kunen stated, regarding depression and anxiety, that although depression and anxiety could contribute to Plaintiff's difficulties with logical problem-solving questions, they are likely secondary to his liver cancer, medications, and liver transplant.[47] Dr. Kunen also stated that Plaintiff could not risk being around people or toxic chemicals at the plant because of his compromised immune system.[48]

---

[40] R. Doc. 8-3 at 21; R. Doc. 8-9 at 928.
[41] R. Doc. 8-3 at 21; R. Doc. 8-9 at 928.
[42] R. Doc. 8-3 at 21; R. Doc. 8-9 at 931.
[43] R. Doc. 8-3 at 21; R. Doc. 8-9 at 931.
[44] R. Doc. 8-3 at 21.
[45] R. Doc. 8-3 at 21.
[46] R. Doc. 8-3 at 21; R. Doc. 8-9 at 932.
[47] R. Doc. 8-3 at 21; R. Doc. 8-9 at 932.
[48] R. Doc. 8-3 at 21; R. Doc. 8-9 at 932.

The ALJ considered Dr. Kunen's opinion and found it not persuasive because it was supported only by Plaintiff's self-report, it was not an opinion of mental limitations due to a mental condition, and it was not supported by the objective medical evidence of record which consistently documented denial of psychological symptoms and no abnormal mental status examinations.[49] The ALJ found that the opinion was also inconsistent with the overall record showing no treatment for mental health throughout the relevant period of review.[50] The ALJ ultimately determined that because the Plaintiff's "mental impairment causes no more than 'mild' limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the [Plaintiff's] ability to do basic work activities, as described above, it is nonsevere (20 CFR 404.1520a(d)(1)."[51]

As the ALJ pointed out, the record contains multiple notes that Plaintiff was alert and oriented.[52] The overall record shows a pattern of normal or appropriate mood, affect, behavior, thought content, judgment, and orientation, both before and after his liver transplant.[53] The overall record shows no significant educational, linguistic, mental, emotional, intellectual, or cognitive limitations, and Plaintiff testified that he was getting no treatment for mental health.[54] The ALJ acknowledged that Plaintiff is on chronic immunosuppressive medications status post liver transplant. However, none of his treating physicians indicated to him or mentioned in their records that he had social limitations of any kind. The ALJ's analysis reveals a thorough consideration of the medical evidence and an appropriate assessment of Plaintiff's impairments and RFC based on substantial evidence.

---

[49] R. Doc. 8-3 at 21.
[50] R. Doc. 8-3 at 21.
[51] R. Doc. 8-3 at 21.
[52] R. Doc. 8-3 at 17-21.
[53] R. Doc. 8-3 at 17-21.
[54] R. Doc. 8-3 at 15.

**2.  The ALJ's analysis of the step eight finding did not lack the necessary specificity to provide Plaintiff with due process as the vocational expert identified a significant number of jobs that Plaintiff can perform.**

Plaintiff argues that the Vocational Expert "played fast and loose with the information in estimating the work that was available to a person comparable to Plaintiff."[55] During the hearing, the ALJ asked the vocational expert whether a hypothetical person, the same age as Plaintiff, with the same educational background, work history, and RFC could perform jobs that exist in the national economy. The vocational expert testified that this individual could perform jobs as a:

> 1. Cashier (*Dictionary of Occupational Titles (DOT)* No. 211.462-010): 1,233,989 jobs in the national economy;
> 2. Receptionist and Information Clerk (*DOT* No. 237.367-018): 94,117 jobs in the national economy; and
> 3. Usher/Lobby Attendant/Ticket Taker (*DOT* No. 344.677-010): 90,131 jobs in the national economy (Tr. 69).[56]

Based on this testimony, the ALJ found that Plaintiff could make a successful adjustment to work that exists in significant numbers in the national economy.[57] Plaintiff, relying on *Cantrell v. Comm'r of Soc. Sec. Admin.*, No. 4:22-CV-229-P, 2023 WL 2576447, at *6 (N.D. Tex. Feb. 28, 2023), report and recommendation adopted sub nom. *Cantrell v. Comm'r, Soc. Sec. Admin.*, No. 4:22-CV-0229-P, 2023 WL 2574032 (N.D. Tex. Mar. 20, 2023), argues that the vocational expert's testimony did not provide the ALJ with substantial evidence on the number of jobs available for Plaintiff in the national economy. Plaintiff argues that Standard Occupation Classification (SOC) codes do not provide numerical data for specific DOT codes within the SOC code.[58]

---

[55] R. Doc. 13 at 16.
[56] R. Doc. 8-3 at 27.
[57] R. Doc. 8-3 at 27.
[58] R. Doc. 13 at 15.

At the hearing, Plaintiff's counsel asked the vocational expert how she arrived at the number of jobs available.[59] The vocational expert testified that she utilized the Occupational Employment Quarterly.[60] She further testified that the job numbers were specific to the Standard Occupation Classification (SOC) group, and she explained her methodology for arriving at the job numbers.[61] Plaintiff's counsel did not object at the hearing to the vocational expert's job number estimates.

As the Commissioner stated in opposition, the Plaintiff essentially takes issue with the use of data aggregation, arguing in essence that, if multiple *DOT* codes map to a single SOC Code that has significant positions available, data about the SOC code can provide no useful information about how many positions each of the individual *DOT* codes contributed to the total.[62] However, providing relevant information from available vocational resources is exactly why vocational expert testimony is obtained in the administrative process. *See* 20 C.F.R. § 404.1566(e) (vocational expert testimony may be used to obtain information about "specific occupations"); *see also Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) ("The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed.").

In the Fifth Circuit, it is well settled that a vocational expert's testimony, based on a properly phrased hypothetical question, constitutes substantial evidence. "A vocational expert is called to testify because of his familiarity with job requirements and working conditions. 'The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed.'" *Vaughan*, 58 F.3d

---

[59] R. Doc. 8-3 at 72.
[60] R. Doc. 8-3 at 72.
[61] R. Doc. 8-3 at 72.
[62] R. Doc. 13 at 15-16.

at 132. "If the vocational expert can enumerate a significant number of jobs existing in one or more occupations that Plaintiff can perform, the ALJ's decision should be affirmed. *See Carey,* 230 F.3d at 135. Plaintiff has not presented any evidence to contradict the vocational expert's testimony regarding the number of jobs available at step eight, and Plaintiff's speculation that there are less jobs available is insufficient to overcome the testimony of the vocational expert. Substantial evidence supports the ALJ's decision, and thus, the decision should be affirmed.

## VI.    RECOMMENDATION

The analysis above demonstrates that the Plaintiff's claim of reversible error is without merit.  The record considered as a whole supports the finding that the ALJ applied the proper legal standards, and substantial evidence supports the determination that the Plaintiff has not been disabled since February 3, 2022.  Accordingly, **it is RECOMMENDED** that under sentence four of 42 U.S.C. § 405(g), the final decision of the Acting Commissioner of Social Security be **AFFIRMED,** and this action be **DISMISSED WITH PREJUDICE**.

Signed in Baton Rouge, Louisiana, on March 6, 2026.


**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**